**COMMONWEALTH of Pennsylvania**
Appellee

v.

**Craig Lewis HEILMAN Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.

Filed June 1, 2005.

Gregory L. Hollinger, Hanover, for appellant.

Frederick D. Lingle, Assistant District Attorney, Lock Haven, for Commonwealth, appellee.

Before: BENDER, PANELLA and MONTEMURO * JJ.

* Retired Justice assigned to Superior Court.

1. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from the judgment of sentence of 20 to 120 months' imprisonment entered June 14, 2004, in the Clinton County Court of Common Pleas following revocation of Appellant's probation. For the reasons set forth below, we reverse and remand for a *Gagnon II* [1] revocation hearing.

¶ 2 In February of 2002, Appellant was charged with sexually assaulting his 15 year old daughter. On July 19, 2002, pursuant to an agreement with the Commonwealth, Appellant pled *nolo contendere* to one count of incest; sentencing was scheduled for September 9th. At the sentencing hearing, after reviewing a multitude of letters in support of Appellant, the court expressed concern about Appellant's adamant denial of the charges, as well as Appellant's belief that he was compelled to agree to a plea bargain because he could not afford a private attorney.[2] Therefore, the court continued the hearing until October 7th in order to allow Appellant time to reconsider his plea.

¶ 3 At the October 7th hearing, Appellant explained that, despite his continued denial of the claims, he wished to avoid the uncertainty of a trial where his daughter's credibility would be weighed against his own. However, after the court explained to him that character testimony is admissible as substantive evidence at trial, Appellant appeared to be confused. Moreover, he indicated that his ex-wife might have forced his daughter to fabricate the story. Therefore, once again, the court delayed sentencing, this time directing the entire staff of the public defender's office to review the case.

2. Appellant was represented by the public defender's office.

¶ 4 On November 26, 2002, Appellant filed a petition to withdraw the plea, which was granted following a hearing the next day. Subsequently both Appellant and the Commonwealth filed pretrial motions; Appellant, seeking suppression of statements he made to the police, and the Commonwealth, seeking to preclude evidence that the victim had been raped in the past. However, on June 9, 2003, Appellant rescinded the withdrawal of his *nolo contendre* plea, and the court scheduled sentencing for August 4th.

¶ 5 At the sentencing hearing, the court once again reviewed the many letters it had received on Appellant's behalf, and noted that the victim did not offer testimony or provide an impact statement. Finding that Appellant's "character and attitude indicate that [he is] unlikely to commit another crime" and would likely "respond affirmatively to probationary treatment[,]" (N.T., 8/4/03, at 13), the court sentenced Appellant in the mitigated range of the guidelines to 36 months' probation. In addition, central to this appeal, the court ordered Appellant to participate in a sexual offenders' treatment program.

¶ 6 On October 29, 2003, the Probation Department filed a Violation Report indicating that Appellant had violated conditions of his probation, namely he was terminated from the sexual offenders' treatment program.[3] At the November 17, 2003, revocation hearing the Assistant District Attorney (ADA) explained that Appellant was terminated from the program because "he was somewhat disruptive and difficult during that." (N.T. Revocation Hearing, 11/17/03, at 2). Although there was no representative from the treatment program in court, the

ADA noted that she would have a witness available "if necessary." (*Id.*). The trial judge then stated, "we'll see if [Appellant] wants a hearing." (*Id.*). After Appellant's counsel informed the court that Appellant had a different explanation for his termination, the court stated "You're entitled to a Gagnon I or Gagnon II. What do you want to do?" (*Id.* at 3). Rather than responding to the court's question, counsel began questioning Appellant regarding the circumstances surrounding his termination from the program. Appellant testified that:

> The instructor of the meeting thought I was disruptive in class by participating. It was an open group session. And I had a question, and she didn't—I don't know. She just said, you have to leave. And I said, I was Ordered by the Court to be here. And she said, I will have you leave under police escort. I said, no. I will go home. That was in my windows of opportunity.

(*Id.*). Appellant also indicated that part of the problem was that he entered a plea of *nolo contendre*, and, as such, has never admitted his guilt.

¶ 7 The Commonwealth offered a slightly different version of the events leading to Appellant's termination. Probation Officer Rachel Rauser explained to the court:[4]

> I received a report which indicated that while participating in group, he was trying to indicate victim guilt and another individual's disclosure about incidents that occurred and it caused some disruption with the therapist. She asked him to leave. He refused to leave. And then she basically indicated that she could have him removed by police escort.

---

3. Appellant was terminated from the program on October 17th, a detainer was issued on October 20th, and Appellant was incarcerated the next day.

4. We note that Probation Officer Rauser was never sworn in as a witness at the hearing.

So there was some concern over him not disclosing information about his case in group and also that fact that he was in—another individual, who was a sex offender, he was trying to indicate to the group that he believed that the victim was the cause for the crime in that case.

(*Id.* at 4).

¶ 8 In revoking Appellant's probation, the court admonished Appellant stating that he "probably got the biggest break that this Court ever issued.... Your job was to do exactly what you were told to do, suck it up, and get through this period. Well you, sir, screwed up." (*Id.* at 5). Rather than proceed immediately to sentencing, the court ordered Appellant to undergo a 60–day evaluation at state prison.

¶ 9 When Appellant appeared for resentencing on June 14, 2004, counsel informed the court that the Sexual Offenders' Assessment Board determined that Appellant did not meet the criteria for a sexually violent predator, and submitted a letter from a therapist willing to accept Appellant for counseling. Thereafter, the following exchange took place:

> THE COURT: Let me just interrupt you for a moment there. I find it very difficult to accept somebody asking for counseling—or asking to be exposed to psychological counseling when he won't accept responsibility for the act complained of. So that's doing something in the wind as far as I'm concerned.
>
> [DEFENSE COUNSEL]: And that's a paradox, Judge.
>
> THE COURT: Of course it is.
>
> [DEFENSE COUNSEL]: You know, we have a no contest plea that was entered. And I understand-
>
> THE COURT: I understand that.
>
> [DEFENSE COUNSEL]: That there is some implicit denial and some implicit

acceptance at the same time. And the implicit acceptance was the fact that he accepted the fact that this Court can control his life and what he does for a period of time.

> THE COURT: That's right, Mr. Smith. And when you say to the Court—you come before the Court and you say, I'm not saying I did it, Judge; I'm not saying I did do it, but treat me as though I did it. Isn't that basically what it means, Mr. McKnight? Well, that's what this Court is going to do. And then the Court is not going to stand here and listen, say, now I really didn't do it; so please don't treat me harshly. That's not implicit in a nolo contendre plea. And that's not what I'm going to do.

(N.T. Sentencing Hearing, 6/14/04, at 5–6). The court then sentenced Appellant to a term of 20 to 120 months' imprisonment. Appellant filed a petition for modification on June 17, 2004, which was denied by Order entered the next day. This appeal follows.

¶ 10 Appellant raises three issues for our review.

A. WHETHER APPELLANT'S CLAIMS OF ERROR ARE PROPERLY PRESERVED ON APPEAL.

B. WHETHER THE TRIAL COURT ERRED IN REVOKING APPELLANT['S] PROBATION WHEN IT DID SO WITHOUT CONDUCTING A PROPER HEARING AND WITHOUT REQUIRING THE COMMONWEALTH TO OFFER ANY EVIDENCE TO PROVE A VIOLATION.

C. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A TERM OF TOTAL CONFINEMENT OF 20 TO 120 MONTHS FOLLOWING A

PROBATION REVOCATION FOR A TECHNICAL VIOLATION.

(Appellant's Brief at 8–9).

 ¶ 11 Appellant's first issue challenges the trial court's finding that all issues pertaining to the revocation order are waived. In its Opinion, the court noted that Appellant was required to file an appeal within 30 days of the revocation order, which was entered on November 17, 2003. Because the Notice of Appeal was not filed until July 9, 2004, the court concluded that it was untimely, and declined to address Appellant's claims concerning the revocation of his probation.

 ¶ 12 It is axiomatic that an appeal may be taken as of right only from a final order. Pa.R.A.P. 341(a). Generally, in criminal matters, "a ... defendant may appeal only from the judgment of sentence." *Commonwealth v. Swartz,* 397 Pa.Super. 157, 579 A.2d 978, 980 (1990). An appeal prior to final judgment is permitted in exceptional circumstances, such as to prevent a great injustice, or when the issue involved is one of great public importance. *Id.* Further, Pa.R.Crim.P. 708, which applies to probation revocation proceedings, implies that the right to appeal accrues after probation is revoked and sentence is imposed, at which time the defendant must be advised of his appellate rights. *See* Pa.R.Crim.P. 708(C)(3). *See Commonwealth v. Hottinger,* 370 Pa.Super. 527, 537 A.2d 1, 3 n. 2 (1987), *appeal denied,* 520 Pa. 614, 554 A.2d 507 (1988) ("The thirty-day appeal period does not begin to run until the trial court imposes sentence, *informs the defendant of his right to appeal within thirty days,* and enters the judgment on the docket.") (emphasis in original).

 ¶ 13 Generally, probation is revoked and sentence imposed at the same hearing. However, when, as here, sentencing is delayed, absent exceptional circumstances the defendant's right to appeal the revocation order accrues only after he is sentenced. Because Appellant's July 9, 2004, Notice of Appeal was timely filed within 30 days of his June 14, 2004, sentencing, we find that Appellant preserved his challenge to the revocation order.

 ¶ 14 In his first substantive claim, Appellant argues that the trial court erred in failing to provide him with a proper *Gagnon II* hearing.[5] "When reviewing the results of a revocation hearing, this Court is limited to determining the validity of those proceedings, and the legality of the judgment of sentence imposed." *Commonwealth v. Williams,* 801 A.2d 584, 585 (Pa.Super.2002), *appeal denied,* 572 Pa. 756, 818 A.2d 504 (2003).

 ¶ 15 In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court held that a defendant accused of violating the terms of his probation is entitled to two hearings prior to formal revocation and re-sentencing.

> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.

*Commonwealth v. Sims,* 770 A.2d 346, 349 (Pa.Super.2001). The *Gagnon II* hearing

---

5. As stated *supra,* the trial court did not address this claim in its Opinion. Moreover, relying on the trial court's determination that the appeal was untimely, the Commonwealth also did not address this claim in its brief.

requires two inquiries: (1) whether the probationer has in fact violated one of the conditions of his probation, and, if so, (2) should the probationer "be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation[.]" *Id.* (quoting *Gagnon, supra* at 784, 93 S.Ct. 1756). The Supreme Court explained,

> When the [probation] officer's view of the probationer's or parolee's conduct differs in this fundamental way from the latter's own view, due process requires that the difference be resolved before revocation becomes final. Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.

*Gagnon, supra* at 785, 93 S.Ct. 1756. Moreover, in Pennsylvania, "cases that [have] upheld revocation on the basis of technical violations [have] found 'wilful or flagrant disrespect' for the terms of probation on the part of the defendants." *Commonwealth v. Ballard,* 814 A.2d 1242, 1246 (Pa.Super.2003) (quoting *Commonwealth v. Del Conte,* 277 Pa.Super. 296, 419 A.2d 780 (1980)).

■ ¶ 16 With these standards in mind, we find that the November 14, 2003, hearing satisfied the *Gagnon I* requirement that the Commonwealth prove probable cause of a violation since Appellant admitted during the hearing that he had been discharged from court-ordered therapy. However, we also find that Appellant was never thereafter afforded a more comprehensive *Gagnon II* hearing. Rather, it appears from a review of the transcript that the judge determined that Appellant had waived his right to a *Gagnon II* hearing when he failed specifically to request one. This determination is error.

■ ¶ 17 We acknowledge that one violation hearing may satisfy the requirements of both a *Gagnon I* and *Gagnon II* hearing. *See Commonwealth v. Cappellini,* 456 Pa.Super. 498, 690 A.2d 1220 (1997). In addition, a defendant always has the right to waive his *Gagnon II* hearing. However, "for this Court to uphold such a waiver [of a constitutional right], the record must clearly demonstrate an informed relinquishment of a known right." *Commonwealth v. Houtz,* 856 A.2d 119, 122 (Pa.Super.2004) (citations omitted). The record here reveals no such informed waiver. Appellant's silence following the court's comment that he is entitled to a *Gagnon I* or *Gagnon II* hearing does not constitute a waiver of his right to such a hearing. Clearly, a tacit or implied waiver of a constitutional right is simply insufficient.

¶ 18 Moreover, there can be no legitimate argument made that the November 17th hearing satisfied the requirements of *Gagnon II.* Indeed, the Commonwealth presented no witnesses; the only evidence of Appellant's violation came from his own sworn testimony, as well as from the unsworn comments of the ADA and probation officer, neither of whom was present at the therapy session from which Appellant was expelled. Appellant and his attorney both indicated that Appellant had a legitimate explanation for his failure to complete the sex offenders' program. It is clear that Appellant intended to prove that he did not display "wilful or flagrant disrespect" for the terms of his probation. *Ballard, supra* at 1246. Although the events are not made explicit in the record, it appears that the instructor in the group therapy session requested that he leave

because he would not acknowledge his guilt, but rather, indicated victim guilt. The record reveals, however, that Appellant has consistently denied culpability throughout the entire proceedings, hence his plea of *nolo contendre* rather than a guilty plea; he admitted that he could be convicted based solely on the credibility of his daughter's testimony. As this Court has stated, "a plea of *nolo contendre* does not, by its very nature, require the pleading defendant to concede his or her guilt ... [rather it] is 'a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty.'" *Commonwealth v. Lewis,* 791 A.2d 1227, 1234 (Pa.Super.2002), *appeal denied,* 569 Pa. 717, 806 A.2d 859 (2002) (quoting *North Carolina v. Alford,* 400 U.S. 25, 36, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

¶ 19 The revocation court, which also presided over the plea proceedings, was well aware of the circumstances surrounding Appellant's plea. Indeed, the court seemed to recognize this unique situation during the re-sentencing hearing: "[I]n order to have any success at [sex offender counseling], you're going to have to admit that you need the help. Now, I'm not going to ask you to do that because that's not part of how you pled." (N.T., 6/14/04, at 7). However, by revoking Appellant's probation based on his unwillingness to concede his guilt in a treatment program that is exactly what the trial court did.[6]

¶ 20 We fail to see how the November 17, 2003, hearing provided the trial court with the evidence necessary to determine whether Appellant willfully disregarded the terms of his probation, particularly since the court failed to inquire into the specific reasons for his discharge. It is undisputed that Appellant attended the sessions and participated. How this could constitute a technical violation of his probation is unclear. If indeed the reason for his discharge was his failure to admit guilt, then perhaps a different type of therapy would be more appropriate for a probationer who pled *nolo contendre.*

¶ 21 Therefore, we find that Appellant was not provided with a *Gagnon II* hearing; accordingly, we reverse the judgment of sentence and remand for a proper hearing.

██ ¶ 22 Although our disposition of this issue renders moot Appellant's sentencing claim, we note that, in any event, we would find the issue waived. In his Pa.R.A.P.1925(b) Statement, Appellant's only sentencing issue challenges the court's authority to sentence him outside the guidelines in light of the recent United States Supreme Court decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In his brief, however, Appellant argues that the trial court abused its discretion in imposing a sentence of total confinement based solely on a technical violation of his probation. As this claim is distinct from the one raised in his 1925(b) Statement, we would find it waived. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998).

---

**6.** This case demonstrates an inherent problem with *nolo contendre* pleas in sexual assault cases, where it is clear that the defendant will be ordered to complete sex offender treatment as part of his sentence. Indeed, it seems unjust to permit a defendant to plead no contest and not expressly admit his guilt, then require him to do just that in order to complete a treatment program. Here, at the re-sentencing hearing, counsel indicated to the court that he had found a therapist who was willing to accept Appellant for counseling. However, at that time, the court was unwilling to consider any alternative to a prison term.

¶ 23 Judgment of sentence reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.