J-S14028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE AYALA | : | |
| | : | |
| Appellant | : | No. 1670 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005481-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE AYALA | : | |
| | : | |
| Appellant | : | No. 1671 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0030769-2018

BEFORE:  DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:

Jose Ayala ("Ayala") appeals from the judgment of sentence imposed by

the Philadelphia County of Common Pleas ("trial court") following the

revocation of his probation at docket number MC-51-CR-0030769-2018

---

[*] Former Justice specially assigned to the Superior Court.

("30769-2018").[1]    Ayala contends that the Commonwealth introduced insufficient evidence to establish that he was in technical violation of the terms of his probation at docket number 30769-2018.   Upon review, we vacate Ayala's judgment of sentence and remand for the trial court to conduct a new violation of probation hearing in accordance with this decision.

The trial court oversees Ayala's probation at six cases dating back to 2013.[2]   His repeat drug offenses and probation violations have extended his original terms of probation into a tangled web of interconnecting cases.   At docket number 30769-2018, the case relevant to the instant appeal, Ayala pleaded guilty to possession of a controlled substance while he was serving terms of probation at other dockets.   On March 13, 2019, Ayala received his initial sentence of twelve months of probation supervised by the county probation department.   Had Ayala served this term from the outset, he would have completed it by March 13, 2020.   However, according to the docket for case number 30769-2018, on four occasions, the trial court found probable

---

[1]   Ayala also filed a notice of appeal at docket number CP-51-CR-0005481-2013 ("5481-2013"), but he is no longer pursuing an appellate challenge pertaining to this docket. *See* Ayala's Brief at 3.

[2] The other five cases are docketed at CP-51-CR-0004110-2013 ("4110-2013"), 5481-2013, CP-51-CR-0009590-2014 ("9590-2014"), CP-51-CR-0006722-2016 ("6722-2016"), and MC-51-CR-0013007-2019 ("13007-2019").

cause to believe that Ayala violated his probation following *Gagnon I* hearings and lodged detainers pending *Gagnon II* hearings.[3]

The trial court lodged the first detainer on May 28, 2019. *Gagnon I* Hearing Disposition, 5/28/2019, at 1. The following month, the trial court granted a motion to continue probation and lifted the detainer. Order Continuing Probation, 8/29/2019, at 1.

The court lodged a second detainer on November 6, 2020. *Gagnon I* Hearing Disposition, 11/6/2020, at 1. Presumably, this detainer related to Ayala's November 1, 2020 arrest and subsequent May 2021 charges of possession of a controlled substance at docket number CP-51-CR-0004223-2021 ("4223-2021").[4] On June 22, 2021, the trial court lifted the second detainer lodged at docket number 30769-2018 and continued the *Gagnon II* hearing "for status of open bill." Trial Court Order, 6/22/2021, at 1 (capitalization modified). On October 27, 2021, the trial court issued a bench warrant and wanted cards because Ayala failed to appear at the *Gagnon II*

---

[3] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *see also Commonwealth v. Ferguson*, 761 A.2d 613 (Pa. Super. 2000) (explaining that when a probationer is detained based on an alleged probation violation, due process requires a *Gagnon I* pre-revocation hearing to determine whether there is probable cause that the probationer committed a violation, followed by a second more comprehensive *Gagnon II* revocation hearing wherein trial court determines whether to revoke probationer's probation).

[4] We derive the facts regarding the procedural history of docket number 4223-2021 from the public docket sheet, of which we take judicial notice. *See* Pa.R.E. 201(b)(2), (c)(1).

hearing and had no contact with the probation department. Bench Warrant Probation Violation, 10/27/2021, at 1.

The trial court lodged a third detainer on November 30, 2021. *Gagnon I* Hearing Disposition, 11/30/2021, at 1. It later lifted the third detainer on April 28, 2022, when it ordered the sheriff to transport Ayala to the "FIR facility" when a bed became available. Order Lifting Detainer, 4/28/2022, at 1.[5] On July 14, 2022, however, Ayala failed to appear at the *Gagnon II* hearing, prompting the issuance of a second bench warrant and wanted cards. Bench Warrant Probation Violation, 7/14/2022, at 1.

No further activity occurred until a *Gagnon I* hearing on January 17, 2024, wherein the court lifted the bench warrant and lodged a detainer, incarcerating Ayala pending a *Gagnon II* hearing. *Gagnon I* Hearing Disposition, 1/17/2024, at 1. Meanwhile, on January 23, 2024, Ayala entered a guilty plea at case number 4223-2021.

The Commonwealth filed a *Gagnon II* summary report prior to the hearing, asserting that Ayala was in direct violation based upon the conviction at 4223-2021 as well as a technical violation for failure to report. *Gagnon II* Summary, 3/1/2024, at 2 (numbering supplied). The report also referred to a potential direct violation for an arrest in January 2024. *Id.* Regarding the technical violation, the summary stated that Ayala was "in technical violation

_____

[5] Presumably, FIR stands for Forensic Intensive Recovery facility.

for absconding and being placed on Wanted Cards on two different occasions, incurring three new arrests and failing to appear at two VOP's [sic] on 10/27/2021 and 7/14/2022. [] Ayala has NEVER reported to the Probation Department during the four years that he has been under probation supervision." *Id.* at 3.

On March 13, 2024, the trial court conducted a brief *Gagnon II* hearing regarding Ayala's six probationary cases, including case number 30769-2018. To illustrate the hearing's brevity, we have replicated the notes of testimony from the hearing in their entirety following the calling of the case and entry of counsels' appearances:

[Trial Court]: This is a direct violation; is that correct?

[Prosecutor]: That's correct.

[Defense counsel]: That's my understanding, Your Honor. It would be my request for a [presentence investigation ("PSI")] and a deferred sentencing date. He does have [six] dockets and I need time to calculate all of his exposure and the amount of time credit that he has and I would like to see what the PSI says.

[Trial court]: Without a hearing first I have not found him in violation.

[Defense counsel]: We're not contesting the direct.

[Prosecutor]: The Commonwealth has no objection to that, Your Honor.

[Trial court]: All right. So I find the defendant in direct violation. Give me a date for sentencing long enough for him to get a PSI. Do you need a mental health report?

[Defense counsel]: I would like one.

- 5 -

[Court crier]: 5/23.

N.T., 3/13/2024, at 3-4.

At the May 23, 2024 hearing, Ayala's defense counsel acknowledged that the trial court had found Ayala in direct violation of his probation based upon his open guilty plea to the drug charge at docket number 4223-2021 that was pending sentencing. N.T., 5/23/2024, at 5. After advocating for the trial court to consider mitigating factors such as his substance abuse issues, defense counsel addressed the "exposure and the status of each" case. ***Id.*** at 9. Counsel and the trial court had the following exchange regarding docket number 30769-2018:

> [Defense counsel]: [M]y understanding is the probation expired prior to the new incident date for the new arrest.
>
> [Trial court]: But not his absconding?
>
> [Defense counsel]: Correct. But my understanding is that Your Honor, at the last listing, found him in direct violation. I did not hear any mention of a technical violation finding.
>
> [Trial court]: All right. I'll hear from the Commonwealth.

***Id.*** at 14.

The prosecutor did not address counsel's argument and simply requested a "sentence within the guidelines" at the court's discretion without specifying a breakdown for each case. N.T. 5/23/2024, at 11-14. After consulting the guidelines in effect at the time of his 2013 cases, ascertaining that Ayala did not wish to offer an allocution, and explaining the rationale for its sentences, the trial court announced that at docket number 30769-2018,

it was finding Ayala "in technical violation for [his] failure to report." *Id.* at 14-16. It revoked Ayala's probation and imposed a sentence of six to twelve months of incarceration to run consecutive to his sentence imposed at docket number 5481-2013.[6] *Id.* at 16.

Ayala filed a post-sentence motion, arguing, in relevant part, that the trial court denied him his due process rights and his right to a hearing afforded to him by *Gagnon* and 42 Pa.C.S. § 9771(d) by belatedly finding at sentencing that Ayala was in technical violation of his probation at docket number 30769-2018 based upon information that was not made part of the record at the *Gagnon II* hearing. *See* Motion for Reconsideration of Sentence, 5/6/2024, at ¶¶ 1-9.

Following the trial court's denial of his motion, Ayala timely appealed to this Court. Both Ayala and the trial court complied with Rule 1925 of our appellate procedural rules. Ayala presents one issue for our review: "Was the finding that [Ayala] was in technical violation of his probation under [docket number 30769-2018] not based on sufficient evidence of record, and was the subsequent carceral sentence of 6 to 12 months therefore imposed in violation of 42 Pa.C.S. § 9771?" Ayala's Brief at 2.

_____

[6] As for the other dockets, the trial court found Ayala in direct violation at docket numbers 4110-2013 and 5481-2013 with no further penalty imposed on the former and one-and-a-half to three years of incarceration on the latter. *Id.* at 16. For docket numbers 9590-2014 and 6722-2016, the court did not specify the type of violation and did not impose a further penalty. *Id.* The court terminated the matter for 13007-2019 without finding a violation. *Id.*

- 7 -

When reviewing an order revoking probation, this Court is limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1033-34 (Pa. Super. 2013) (en banc). "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court," and this Court will not disturb the trial court's decision on appeal "in the absence of an error of law or an abuse of discretion." *Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014).

On appeal, Ayala reprises his argument from his post-sentence motion. He maintains that the trial court erred by finding him to be in technical violation of his probation at the sentencing hearing because the Commonwealth failed to present any evidence establishing the technical violation. Ayala's Brief at 9-12; Ayala's Reply Brief at 1-3. Ayala insists that the only indication that he had absconded and failed to report to his probation at docket number 30759-2018 were the allegations by the probation officer in the *Gagnon II* summary, yet the Commonwealth did not enter this report into evidence or otherwise establish the veracity of the allegations under oath, and defense counsel did not concede that he had engaged in conduct constituting a technical violation. Ayala's Brief at 11-12; Reply Brief at 1-3. As such, Ayala argues, there is no evidence in the record establishing that he absconded or failed to report to his probation officer at docket number 30769-

2018. Ayala's Brief at 11. Based upon the insufficiency of the evidence, Ayala seeks for this Court to vacate his judgment of sentence at docket number 30769-2018 and to discharge him from supervision under that docket. *Id.* at 12.

Prior to revoking probation and following a finding of probable cause of the probation violation at a *Gagnon I* hearing, the trial court must conduct a *Gagnon II* revocation hearing, at which its first task is to determine whether the probationer has in fact acted in violation of one or more conditions of probation. *See* 42 Pa.C.S. § 9771(d) ("There shall be no revocation … except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation."); Pa.R.Crim.P. 708(B); *Gagnon*, 411 U.S. at 785. A trial court may revoke a defendant's probation only if the preponderance of the evidence establishes that the defendant violated a specific condition of probation or committed a new crime. *Commonwealth v. Foster*, 214 A.3d 1240, 1243 (Pa. 2019); *see also* 42 Pa.C.S. § 9771(b) (providing that the trial court may "revoke an order of probation upon proof of the violation of specified conditions of the probation").[7] If the trial court decides that the probationer violated a condition of probation, then it must determine, in light of the "new

---

[7] We refer to the version of section 9771 effective December 18, 2019 to June 11, 2024. The General Assembly has subsequently amended the statute, but the relevant language remains the same.

criminal act or the violation of a condition of probation," whether "probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity." **Foster**, 214 A.3d at 1243; **see also Gagnon II**, 411 U.S. at 785.

A probationer is entitled to due process rights at the **Gagnon II** revocation hearing, including: (1) written notice of the claimed violation(s); (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and reasons for revocation. **Commonwealth v. Kates**, 305 A.2d 701, 709 (Pa. 1973) (citing **Morrisey v. Brewer**, 408 U.S. 471, 488 (1972)).

While the trial court need not conduct the revocation hearing with the same procedural and evidentiary rules applicable to a criminal trial, the trial court must ensure that the evidence received has probative value. **Id.** at 710. To that end, "[h]earsay is not admissible at a **Gagnon II** hearing absent a finding of good cause for not allowing confrontation." **Commonwealth v. Allshouse**, 969 A.2d 1236, 1241 (Pa. Super. 2009). Likewise, it is error for the trial court to rely upon unsworn statements by the probation officer or documents not admitted into evidence at the hearing. **Id.** at 1239-41.

Here, as our above replication of the notes of transcript reflect, the trial court conducted a very brief **Gagnon II** hearing, but did so with the acquiescence of the parties. As such, the record is rather sparse. All agreed

- 10 -

that there had been a direct violation, but no one identified the conduct constituting the direct violation on the record.[8] Defense counsel jumped into issues pertaining to sentencing prior to the court's finding that Ayala had violated his probation or determining whether the violation indicated that probation was no longer achieving rehabilitation and deterrence. When the trial court mentioned that it had not yet found him in violation without a hearing, defense counsel responded that Ayala was "not contesting the direct." N.T., 3/13/2024, at 3. Although the probation officer's **Gagnon II** summary contended that Ayala was also in technical violation of his probation, neither the prosecutor nor the defense mentioned the technical violation, and the court moved directly to scheduling a hearing date for sentencing.[9]

_____

[8] All agree on appeal that the direct violation was based upon Ayala's guilty plea at case number 4223-2021. **See** Trial Court Opinion, 8/16/2024, at 2-5 (numbering supplied); Ayala's Brief at 10 n.4; Commonwealth's Brief at 5 n.9.

[9] The Commonwealth urges this Court to find that Ayala waived his claim that he could not be in direct violation of his probation at 30769-2018 because of the natural expiration of his probationary term without the court finding that he was in technical violation based upon Ayala's "failure to preserve a timely objection to the revocation proceedings" and concession that he directly violated the terms of his probation. Commonwealth's Brief at 11-13. We decline to find waiver under these circumstances. What is good for the proverbial goose is good for the gander; it is the Commonwealth's burden, after all, to present evidence establishing the facts of a probation violation. **See Commonwealth v. Brown**, 469 A.2d 1371, 1374 n.2 (Pa. 1983) ("In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence."). Essentially, the Commonwealth wants us to find that Ayala waived his right to present his argument by not making it at the abbreviated **Gagnon II** hearing, yet it also wants the benefit of a finding of a technical violation when it did not mention or present evidence
*(Footnote Continued Next Page)*

At this next hearing, counsel argued that without a finding of a technical violation, the Commonwealth did not establish that the terms and conditions of Ayala's probation were still in effect at docket number 30769-2018 when he committed the crimes at docket number 4223-2021, and that he could not be found to be in direct violation without a corresponding finding that he was in technical violation. Our law is clear that a probationer who absconds from a probationary sentence cannot later claim that he had been serving the

_____

of such a violation on the record at this same hearing. While it would have been prudent for defense counsel to have raised the expiration argument initially when she explained to the court that Ayala was not contesting the direct violation, she requested additional time to go through the six dockets at issue and counsel raised the argument, albeit in a somewhat opaque manner, prior to sentencing at the next hearing. And unlike the cases finding waiver to which the Commonwealth cites in its brief, Ayala also raised the issue in a post-sentence motion, thereby giving the trial court with an opportunity to address the issue prior to appeal.

Furthermore, while a defendant can certainly waive the due process rights afforded in a *Gagnon II* hearing, we decline to find that Ayala waived his right to hear disclosure of the evidence against him without a clear demonstration of an "informed relinquishment of a known right." *Commonwealth v. Heilman*, 876 A.2d 1021, 1027 (Pa. Super. 2005). Counsel's statement that Ayala was not contesting the direct is an acknowledgement that he committed a crime that constituted a direct violation of his probation at one or more of the dockets, and not inherently a waiver of his *Gagnon II* hearing rights or his right to have the court consider evidence of his conduct at a hearing provided by section 9771(d). To the extent that the court construed it as a tacit or implied waiver, this type of waiver is "simply insufficient" to waive the constitutional rights afforded by *Gagnon*. *See Heilman*, 876 A.2d at 1027 (Holding that defense counsel's failure to respond directly to the trial court's statement the defendant was "entitled to a *Gagnon I* or *Gagnon II*. What [does he] want to do?" did not constitute a waiver of the right to a *Gagnon II* hearing: "Clearly, a tacit or implied waiver of a constitutional right is simply insufficient.").

- 12 -

sentence all along such that the sentence had expired on its scheduled expiration date. **Commonwealth v. Ortega**, 995 A.2d 879, 885 (Pa. Super. 2010), *abrogated on other grounds by* **Foster**, 214 A.3d at 1251. But to get to the direct violation finding, the Commonwealth needed to establish by a preponderance of the evidence that Ayala did in fact abscond and that such act violated the terms and conditions of his probation. **See Foster**, 214 A.3d at 1243. Both the trial court and the Commonwealth cite the **Gagnon II** summary to support the notion that there was sufficient evidence in the record establishing Ayala's technical violation. **See** Trial Court Opinion, 8/16/2024, at 2-4; Commonwealth's Brief at 12. However, our review of the record reveals that Ayala is correct: the probation officer's unsworn allegations in the **Gagnon II** summary that was filed but not offered into evidence does not have the probative value to establish that Ayala had absconded and failed to comply with the terms of his probation. **See Heilman**, 876 A.2d at 1027-28 (determining that the evidence was insufficient to establish probation violation because the Commonwealth presented no witnesses and relied upon the defendant's testimony and unsworn comments of the prosecutor and probation officer); *see also Commonwealth v. Jeffries*, 317 A.3d 614, 2024 WL 1249940 (Pa. Super. 2024) (non-precedential decision) (determining that

a hearsay report from a treatment facility and the filing of a *Gagnon* report was insufficient to establish a probation violation).[10]

Without the benefit of the allegations in the *Gagnon II* summary, the Commonwealth did not establish that Ayala had absconded and failed to report in accordance with the terms of his probation at docket number 30769-2018. Although the bench warrants suggest that Ayala did abscond during his probationary term, the Commonwealth neglected to establish the basic facts and to specify which probationary condition Ayala violated. *See Foster*, 214 A.3d at 1243.

Nevertheless, Ayala is not entitled to the relief that he requests, which is a discharge from supervision at docket number 30769-2018. As noted, it is the Commonwealth's burden to prove that Ayala engaged in conduct that violated his probation. But a probation violation hearing differs from a criminal trial; the concept of double jeopardy is not implicated, and the "controlling consideration at a [violation of probation] hearing is whether the facts presented to the court are probative and reliable and not whether traditional rules of procedure have been strictly observed." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (citation and internal quotation marks omitted). To that end,

---

[10] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019. … Non-precedential decisions ... may be cited for their persuasive value.").

even where the [violation of probation] hearing record is insufficient to sustain revocation of probation, this purpose should not be frustrated—the court that granted probation should not be precluded from determining whether probation remains the proper course only because the Commonwealth failed to include certain formalities in the record.

*Id.* at 86; *but see Foster*, 214 A.3d at 1253 (indicating that a remand under *Mullins* is only indicated if there is "a procedural anomaly or the disregard of an evidentiary formality" instead of situations where the factual evidence produced does not sufficiently establish a violation of a probationary condition).

Given the abbreviated nature and vagueness of the *Gagnon II* hearing, the ambiguity in the record as to what defense counsel contested, and what, if any, rights Ayala agreed to forego, we vacate the judgment of sentence at docket number 30769-2018 and remand for the trial court to conduct a probation violation hearing that comports with *Gagnon II* and section 9771(d). *See Mullins*, 918 A.2d at 86; *see also Heilman*, 876 A.2d at 1027-28 (remanding for a proper *Gagnon II* hearing because the Commonwealth presented no witnesses and relied upon the defendant's testimony and unsworn comments of the prosecutor and probation officer); *Jeffries*, 317 A.3d at *614 ("Under these circumstances, the best resolution of this case is to vacate the revocation sentence and to remand for a new *Gagnon II* hearing where the Commonwealth can develop the record adequately concerning Appellant's alleged violations of probation.").

Judgment of sentence vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/25/2025