J-S37019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DOMINGO VEGA, | |
| Appellant | No. 1255 WDA 2015 |

Appeal from the Judgment of Sentence July 1, 2015
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000215-2012

BEFORE:  GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 03, 2016**

Appellant, Domingo Vega, appeals from the judgment of sentence entered following the revocation of his probation.  We affirm.

We summarize the procedural history of this case as follows.  On October 3, 2012, the Commonwealth filed a criminal information charging Appellant, then age sixty-six, with criminal attempt to commit indecent assault, corruption of a minor, and criminal solicitation stemming from his conduct with an unrelated female victim, who was then five years old.  Also, on that date, pursuant to a plea agreement, Appellant pled guilty to the crime of corruption of a minor.[1]  In addition, on October 3, 2012, the trial

_____

[1] The crimes of criminal attempt to commit indecent assault and criminal solicitation were *nolle prosequied* pursuant to the plea agreement.

court sentenced Appellant to a term of incarceration of six months to twenty-four months, less one day, to be followed by a period of three years plus one day of probation. Appellant was given credit for time served from March 24, 2012. As a special condition, the sentencing court's order directed the following:

b. [That Appellant a]ttend and successfully complete the Project Point of Light Program.

c. [Appellant] shall have NO UNSUPERVISED CONTACT with the victim [or] with children under the age of 18.

Sentencing Order, 10/3/12, at 1. On November 1, 2012, the trial court filed a parole order granting Appellant's petition for parole effective November 5, 2012. The parole order contained the following special conditions:

c. . . . [That Appellant c]omplete [Project Point of Light] Assessment.

. . .

g. [Appellant] shall have no unsupervised contact with minors.

Parole Order, 11/1/12, at 1. Appellant did not take a direct appeal from his judgment of sentence.

Thereafter, on May 18, 2015, Appellant was charged with violating conditions of his probation/parole. Specifically, it was alleged that Appellant failed a periodic polygraph examination on May 6, 2015, during which Appellant admitted to having unsupervised contact with a six-year-old girl. A *Gagnon I* hearing was held on May 20, 2015, after which an order was entered directing that Appellant remain incarcerated until a *Gagnon II*

- 2 -

hearing was held. Appellant's *Gagnon II* hearing was conducted on June 17, 2015, and the revocation court entered an order finding Appellant in violation of his probation.[2] A presentence report was then completed and, on July 1, 2015, the revocation court entered an order revoking Appellant's probation and sentencing him to serve a term of incarceration of eighteen months to five years, with credit for time served. On July 15, 2015, Appellant filed an untimely motion for reconsideration of sentence *nunc pro*

_____

[2] In *Commonwealth v. Heilman*, 876 A.2d 1021 (Pa. Super. 2005), we summarized the probation revocation process as follows:

> In *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), the United States Supreme Court held that a defendant accused of violating the terms of his probation is entitled to two hearings prior to formal revocation and re-sentencing.
>
> When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.
>
> *Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa. Super. 2001). The *Gagnon II* hearing requires two inquiries: (1) whether the probationer has in fact violated one of the conditions of his probation, and, if so, (2) should the probationer be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation. *Id*. (quoting *Gagnon*, *supra* at 784).

*Heilman*, 876 A.2d at 1026-1027.

*tunc*. Appellant's motion was denied the same day. This timely appeal was filed on July 30, 2015. Both Appellant and the revocation court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

> Whether the lower court erred when it found that the allegations of the probation violation were proven by a preponderance of the evidence. (The other issue raised in the Motion for Reconsideration of Sentence-whether the sentence was an abuse of discretion is conceded as having no merit).

Appellant's Brief at 4.

In his sole issue on appeal, Appellant argues that the Commonwealth failed to prove by a preponderance of the evidence that he violated his probation. Appellant's Brief at 7-8. Appellant contends that, because the Commonwealth did not establish the identity of the alleged victim and used Appellant's admission during the polygraph as evidence of the violation, the Commonwealth failed to meet its burden of proof. Appellant alleges that his admission during the polygraph examination was suspect because he had difficulty understanding the meaning of the questions that were posed to him. **Id**. at 7.

We review this issue mindful of the following:

> Initially, we note that, in an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1033 (Pa. Super. 2013) (*en banc*). In this case, Appellant's position pertains to the validity of the proceedings. **Commonwealth v. Ortega**,

- 4 -

995 A.2d 879 (Pa. Super. 2010). In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence. ***Commonwealth v. Brown***, 503 Pa. 514, 469 A.2d 1371, 1374 n.2 (Pa. 1983).

***Commonwealth v. Wright***, 116 A.3d 133, 163 (Pa. Super. 2015).

Instantly, the trial court addressed Appellant's argument with the following analysis, which we adopt as our own:

> Among the conditions of his probation, [Appellant], a convicted sex offender, was directed not to have any unsupervised contact with persons under the age of 18, and the Commonwealth proved by a preponderance of the evidence that he violated that condition.
>
> [Appellant] sat for a treatment polygraph on May 6, 2015, at which time he admitted to having unsupervised contact with a minor. (Hearing Transcript, 06/17/2015, pp. 10-11). Knowing that admission was at odds with what [Appellant] had indicated during the pre-test interview, the polygrapher, Mark Knezovich (Knezovich), pointed out the inconsistency and, after again reviewing the questions with [Appellant] and ensuring that [Appellant] understood, asked them again. (***Id***. at 11). [Appellant] answered differently the second time, implicitly retracting his admission. (***Id***.). According to the test, though, [Appellant] was then being deceptive. (***Id***.).
>
> After answering the questions wrong, [Appellant] claimed to have been confused. (***Id***. at 10). As Knezovich testified, however, [Appellant] had no apparent problem understanding the process or the polygrapher's questions during the pre-test interview, at which time [Appellant] answered the relevant question correctly. (***Id***. at 9 -10). Nor did it appear from the exam video that [Appellant] was having trouble understanding the questions. (***See id***. at 44 (COURT: The reason that I wanted to watch the video and watching [Appellant] testify, he certainly seems more confused today than he did in the video. Watching the video, [Appellant] clearly understood all the questions. [Appellant] clearly understood the setup). [Appellant] further understood the apparent implications when Knezovich questioned the disparity and thus knew how to correct his answers. (***Id***. at 13, 20-21). [Appellant] knew he needed to

answer no if he wanted to stay out of trouble, and that is what he did. Reinforcing the Court's conclusion that [Appellant] understood Knezovich's question and that his confusion was merely feigned, moreover, [Appellant] provided an unhesitating and accurate definition of supervised contact when he was on the witness stand two months later. (*Id*. at 25). There being no testimony to the contrary, the Court can reasonably assume that supervised contact was also part of [Appellant's] internal lexicon on May 6, 2015.

In proffering [Appellant's] admissions and satisfying the Court that [Appellant] understood what he was admitting when he acknowledged having had unsupervised contact with a minor, therefore, the Commonwealth proved by a preponderance of the evidence that [Appellant] violated condition 13 of his probation.[1] That is what the record demonstrates.

> [1] Defense counsel suggested at the hearing that [Appellant's] admission alone was insufficient to sustain a finding that he had violated [probation]. According to **Pitch v. PBPP**, 514 A.2d 638 (Pa. Commw. Ct. 1986), however, the [*corpus delicti*] rule does not apply at revocation proceedings and a defendant's admissions, in and of themselves, are enough to satisfy the Commonwealth's burden. **Id**. at 640-[6]41.

Trial Court Opinion, 12/14/15, at 1-2. On the basis of the analysis stated above and our review of the certified record, we conclude that Appellant's claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2016

IN THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

2015 DEC 14 P 3: 22

COMMONWEALTH OF PENNSYLVANIA       :

        vs.       :       CP-33-CR-213-2012

DOMINGO VEGA,       :
      **Defendant**       :

### Opinion Pursuant to Pa.R.A.P. 1925(a)

In his Statement of Matters Complained of on Appeal, the defendant alleges that the Commonwealth failed to prove by a preponderance of the evidence that he violated his probation and that the Court abused its sentencing discretion by sentencing him to 18 months – 5 years in a state correctional institution and by failing to state its reasons on the record. The record does not support his claims.

Among the conditions of his probation, the defendant, a convicted sex offender, was directed not to have any unsupervised contact with persons under the age of 18, and the Commonwealth proved by a preponderance of the evidence that he violated that condition.

The defendant sat for a treatment polygraph on May 6, 2015, at which time he admitted to having unsupervised contact with a minor. (Hearing Transcript, 06/17/2015, pp. 10-11). Knowing that admission was at odds with what he had indicated during the pre-test interview, the polygrapher, Mark Knezovich ("Knezovich"), pointed out the inconsistency and, after again reviewing the questions with the defendant and ensuring that he understood, asked them again. (*Id.* at 11). The defendant answered differently the second time, implicitly retracting his admission. (*Id.*). According to the test, though, he was then being deceptive. (*Id.*).

After answering the questions "wrong," the defendant claimed to have been confused. (*Id.* at 10). As Knezovich testified, however, he had no apparent problem understanding the process or the polygrapher's questions during the pre-test interview, at which time he answered the relevant question "correctly." (*Id.* at 9-10). Nor did it appear from the exam video that he was having trouble understanding the questions. (*See id.* at 44 (COURT: "The reason that I wanted to watch the video and watching Mr. Vega testify, he certainly seems more confused today than he did in the video. Watching the video, he clearly understood all the questions. He



clearly understood the setup"). He further understood the apparent implications when Knezovich questioned the disparity and thus knew how to "correct" his answers. (*Id.* at 13, 20-21). He knew he needed to answer "no" if he wanted to stay out of trouble, and that is what he did. Reinforcing the Court's conclusion that he understood Knezovich's question and that his confusion was merely feigned, moreover, the defendant provided an unhesitating and accurate definition of "supervised contact" when he was on the witness stand two months later. (*Id.* at 25). There being no testimony to the contrary, the Court can reasonably assume that "supervised contact" was also part of his internal lexicon on May 6, 2015.

In proffering the defendant's admissions and satisfying the Court that he understood what he was admitting when he acknowledged having had unsupervised contact with a minor, therefore, the Commonwealth proved by a preponderance of the evidence that the defendant violated condition 13 of his probation.[1] That is what the record demonstrates.

The record further demonstrates that the Court articulated its reasons for imposing a sentence of 18 months – 5 years and that it did not abuse its discretion in doing so.

Sentencing courts enjoy broad discretion to fashion sentences appropriate to the individuals and circumstances before them, and a defendant must show that a court abused its discretion before he may obtain relief. *Commonwealth v. Moury*, 992 A.2d 162, 169-70 (Pa. Super. 2010). An abuse of discretion will only be found where the record discloses that the sentence was manifestly unreasonable or was occasioned by partiality, prejudice, bias, ill-will, "or such lack of support as to be clearly erroneous." *Id.* For purposes of review, that record must include the court's statement of reasons, which themselves must reflect its consideration of the circumstances of the violation and the character of the offender. *Commonwealth v. Beasley*, 570 A.2d 1336, 1338 (Pa. Super. 1990).

As the Court noted, the defendant had a significant history of sexually offending against children. (Sentencing Transcript, 07/01/2015). It was also that type of conduct for which he was on probation in this county. Yet he refused to obey the simple rule that he not have unsupervised contact with minors—a rule established to ensure the safety of children with whom he might come in contact. Considering the potential consequences of disregarding that condition and the

---

[1] Defense counsel suggested at the hearing that the defendant's admission alone was insufficient to sustain a finding that he had violated. According to *Pitch v. PBPP*, 514 A.2d 638 (Pa. Commw. Ct. 1986), however, the *corpus delicti* rule does not apply at revocation proceedings and a defendant's admissions, in and of themselves, are enough to satisfy the Commonwealth's burden. *Id.* at 640-41.

defendant's unwillingness to voluntarily comply with it, therefore, the Court deemed it best to make it temporarily impossible for him to violate again and to further ensure that he would remain accountable to state authorities for the longest possible period of time after he was released. Given the defendant's history and the threat he posed to one of the most vulnerable segments of society, that outcome was appropriate; rather than an abuse of discretion, it reflected the Court's consideration of all the relevant circumstances.

Whereas the Commonwealth satisfied its burden to establish the defendant's violation by a preponderance of the evidence, and whereas his sentence was designed to address the particularities of the violation, including his character and background and the protection of society, therefore, the Court respectfully submits that the judgment of sentence in this case should be affirmed.

BY THE COURT,

Hon. John Henry Foradora, PJ