J-A15020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AENEAS KASON O'BRIEN | : | |
| | : | |
| Appellant | : | No. 1579 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 8, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000694-2022

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED: AUGUST 21, 2024**

Aeneas O'Brien ("O'Brien") appeals from the judgment of sentence imposed by the Berks County Court of Common Pleas ("trial court") following his convictions of first-degree murder, aggravated assault, firearms not to be carried without a license, and possessing an instrument of crime.[1] On appeal, O'Brien challenges the sufficiency of the evidence to support his conviction of first-degree murder, the relevance of evidence showing Ashanty Colon's ("Colon") ongoing relationship with O'Brien while he was incarcerated, and the admission of Colon's video recorded police interview into evidence pursuant to Pa.R.E. 804(b)(6). After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 2702(a)(1), 6106(a)(1), 907(b).

On November 22, 2021, around 1:30 p.m., a man wearing a black hoodie with a black face mask, gray pants and white shoes approached another man, engaged in an argument with him, and eventually shot him. The two men ran in opposite directions, and the victim collapsed blocks away from the shooting. Police responding to the scene identified the victim as Leonard Sylvester King, Jr., and found him still alive but unresponsive and suffering from shock. EMS transported King to Reading Hospital where he was pronounced dead later that same day. The autopsy performed on King revealed the cause of death was perforation of the heart and lungs from a gunshot wound to the chest.

The shooting occurred in front of a CVS pharmacy and Dollar General on Penn Street in what one witness described as heavy traffic. The same witness was taking a video on his cell phone when the altercation between the shooter and victim broke out. The witness captured footage of a man in a black jacket, gray sweatpants and white shoes standing next to a green car and pointing a gun outside of the frame. Another eyewitness heard the shooter tell the victim that he was going to shoot him before taking a gun from the passenger side of a vehicle, pointing it at the victim and firing several rounds.

Video footage recovered by police from businesses on the 500 block of Penn Street showed the shooter exit a green Toyota Corolla, step away, and then return to take a gun from the passenger side of the car. As he

approached the victim, the vehicle drove away. Through private video footage, officers were able to follow the movements of the shooter after he fled the scene. Cameras from the Jet Set restaurant at 118 S. 9th Street captured a person in the same clothes as the shooter arrive at 123 S. 9th Street after the shooting.

Officers used license plate readers and Video Safety Unit ("VSU") cameras to map the movements of the Toyota Corolla before and after the shooting. Approximately one hour before, the car was seen at 123 S. 9th Street. A woman with her hair in a bun entered the driver's side and a person in a black hooded jacket, black face mask, gray sweatpants and white shoes entered the passenger side of the vehicle. The Toyota then drove to West Reading, stopped at a gas station where the passenger exited and reentered, and the car drove back toward downtown Reading where the shooting took place. The Toyota drove away as the shooting occurred and then returned to 123 S. 9th St. as the shooter walked back to the same address. The same driver exited the vehicle as had entered when leaving 123 S. 9th Street prior to the shooting. The car's registration identified Colon as the owner. Police determined that 123 S. 9th Street is the home address of O'Brien's mother.

The day after the shooting, November 23, 2021, Colon provided a recorded statement to the police. Initially, Colon told officers that she was running an errand when she picked up a man named Gio. She stated that Gio became belligerent with someone in the car and then got out to shoot them.

She consented to a search of her vehicle and to have her phone contents downloaded. After further questioning, police presented a photo to Colon taken from video footage that tracked the shooter as he walked away from the scene. Colon eventually identified the man as her boyfriend and proceeded to answer questions concerning the location of the gun, whether O'Brien had planned to shoot King, and his whereabouts after the shooting. She agreed that he had lost his temper and said that he understood that he made a mistake. She told police that they could find him at his grandmother's house and provided them a layout of the home. Police apprehended O'Brien later that day and he was charged with the above-listed crimes.

Colon and O'Brien sustained a relationship for the sixteen months after he was taken into custody through text messaging, phone calls, video calls, and frequent in-person visits. Their message logs show that O'Brien repeatedly blamed Colon for his incarceration and the charges he was facing. O'Brien threatened Colon to testify as he instructed by making various statements to her, including: "If I got to sit in this bitch for 20 years you're not safe, bro"; "[y]ou are going to understand when I get out of here what the fuck it is"; "[w]e are going to have the longest talk ever once I get out of here, and it ain't gonna be good. It's going to be a long talk. It ain't gonna be good;" and "[i]f you want me home, this the shit you're gonna have to do." N.T., 3/15/2022, at 13, 15, 19, 27.

O'Brien's case proceeded to a jury trial between March 13 and March 16, 2023. Relevantly, Colon had been ordered by subpoena to testify as a witness for the Commonwealth on March 14, but she did not appear. Assistant District Attorney Kathryn Lehman explained that she had been in regular contact with Colon and had clearly communicated when she was required to be in court. That same day, the trial court issued a bench warrant for Colon and the Berks County Sherriff's Office dispatched officers to locate her. The trial court granted a ping order for Colon's phone but attempts to ping her cellphone were unsuccessful. Additionally, police searched license plate readers to locate all vehicles associated with Colon but were unable to trace any of them.

On March 15, the Commonwealth moved to admit Colon's videotaped police interview into evidence under Pennsylvania Rule of Evidence 804(b)(6). The Commonwealth argued that several jail calls and recorded text messages between O'Brien and Colon showed that O'Brien caused Colon's absence from trial through wrongful conduct in that he instructed Colon to contradict her previous statements in her testimony and threatened her safety if he received a sentence of imprisonment. The trial court granted the Commonwealth's motion, finding that O'Brien caused Colon's unavailability as a witness and therefore waived the right to confront her through cross-examination. Colon's recorded statement was subsequently played for the jury.

On March 16, 2023, the jury found O'Brien guilty of all charges and the trial court sentenced him to an aggregate sentence of life imprisonment without parole. This timely appeal followed.

O'Brien presents the following issues for our review:

1. Whether an out-of-court, recorded statement, by a non-testifying witness, Ashanti Colon, should've been admitted as evidence?

2. Whether the trial court erred in permitting irrelevant evidence to be presented to the jury?

3. Whether the trial court erred by failing to ensure that the evidence presented by the Commonwealth satisfied every element required for each crime charged in the case?

O'Brien's Brief at 3 (order adjusted for ease of disposition).

In his first claim, O'Brien argues that Colon's video recorded statement to police should not have been admitted into evidence because she did not testify at trial, thus violating his right to cross-examination and confrontation of a witness. *Id.* at 9-10. O'Brien contends that the Commonwealth "knew or should have known that their witness may become unavailable" because they planned to present a prison guard as a witness whose testimony indicated Colon and O'Brien maintained regular visitations up to two weeks before the trial. *Id.* at 9. O'Brien further states that the Commonwealth's opening statements, wherein they suggested O'Brien threatened Colon to comply with his demands, indicate that the Commonwealth knew Colon would be unavailable. *Id.* Finally, O'Brien asserts that Colon was located soon after

the trial concluded, and he suggests this fact contradicts the Commonwealth's claim that they sufficiently attempted to locate her. *Id.* at 9-10.

The trial court, evaluating the scope and nature of O'Brien's communications with Colon presented by the Commonwealth, found that O'Brien procured Colon's absence at trial through threats and coercion constituting wrongful conduct. Trial Court Opinion, 1/23/2024, at 20. Thus, the trial court held that O'Brien waived his right to cross-examine Colon and her recorded statement was properly admitted into evidence. *Id.*

The admission of evidence is within the sound discretion of the trial court and "we will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Maloney*, 876 A.2d 1002, 1006 (Pa. Super. 2005) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (citation omitted).

Relevantly, a statement is not excluded by the rule prohibiting the admission of hearsay evidence if the declarant is an unavailable witness and the statement is "offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's unavailability as a witness, and did so intending that result." Pa.R.E. 804(b)(6). A witness is unavailable

if, in relevant part, the witness "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure… the declarant's attendance [.]" Pa.R.E. 804(a)(5)(A). To determine whether a defendant has manufactured the unavailability of a witness through wrongdoing, trial courts must conduct an evidentiary hearing outside the jury's presence. ***Commonwealth v. King***, 959 A.2d 405, 414-15 (Pa. Super. 2008). During the hearing, the Commonwealth "must establish by a preponderance of the evidence that: (1) the defendant … was involved in, or responsible for, procuring the unavailability of the declarant … and (2) the defendant … acted with the intent of procuring the declarant's unavailability as an actual or potential witness." ***Id.*** at 414 (citation omitted).

The record reflects that Attorney Lehman maintained regular contact with Colon leading up to the trial. N.T., 3/15/2023, at 36. Attorney Lehman testified that she ensured Colon understood she was under subpoena to appear as a witness, and, further, that she understood the consequences of not appearing. ***Id.*** at 37. When Colon did not appear at the scheduled time, several phone calls by the Commonwealth went to voicemail. ***Id.*** Her failure to appear resulted in the trial court issuing a bench warrant and members of the Berks County Sheriff's Office looking for her at four addresses and "other known places." ***Id.*** at 37-38. No family members could provide an explanation for Colon's whereabouts. ***Id.*** at 38. The trial court issued a ping order to ping the location of her phone, which was also unsuccessful, indicating

that her phone was turned off.  ***Id.***  License plate readers throughout Reading did not detect any plate numbers associated with Colon.  ***Id.***  After the Commonwealth described the efforts expended to locate Colon, O'Brien's counsel stipulated as to the Commonwealth's efforts to secure Colon's appearance at trial.  ***Id.*** at 39.

Additionally, the Commonwealth presented text messages and video calls from between O'Brien and Colon wherein O'Brien threatened Colon, attempted to coerce her to testify to his innocence, and blamed her for his incarceration.  N.T., 3/15/2022, at 11-28.  Upon learning that Colon told police that he was the shooter, O'Brien sent her the following text messages: "know [I know] why you so stressed cause you the reason I'm in here couldn't even keep it a 100," and "idk we gon see how this play out now you might do time tho. [I]f you say I didn't do it on stage your doing time I'm letting [you know right now].  [S]o it's either I sit down for 20+ years or you do 2."  Commonwealth Exhibit 41 (text messages between O'Brien and Colon), at 173-174.  O'Brien additionally told Colon to testify that the man in her car was someone named Gio, and he emphasized that she had control over the outcome of the case by telling her, "[i]f you say no, I'm free.  They don't have one piece of evidence against me."  N.T., 3/15/2022, at 12.  He continued to manipulate Colon by saying, "[i]f you want me home, this the shit you're gonna have to do to get me home," and, "you say you love me, you want me home, this the shit you got to do to get me home."  ***Id.*** at 13.  He told her,

"You get me out of this. You know I told you to pretend. You can't be scared as shit," and "[i]f you would have remained silent in that room I probably wouldn't even be here. We probably never been going through this right now if it wasn't for you." *Id.* at 18. O'Brien insinuated that Colon deserved punishment by telling her that they are "going to have the longest talk ever … it's going to be a long talk. It ain't gonna be good," and that she is "going to understand" when he comes home "what the fuck it is." *Id.* at 15, 19. He also directly threatened her by saying, "If I got to sit in this bitch for 20 years you're not safe, bro. I'm going to tell you something else, I'm dead ass right now. If you would have cared about my life, you would have shut the fuck up." *Id.* at 27.

The record supports the trial court's finding that the Commonwealth sought Colon's presence at trial through careful means and that O'Brien acted with intent in procuring Colon's unavailability by repeatedly threatening her. *See King*, 959 A.2d at 414. O'Brien's sweeping claims that the Commonwealth anticipated Colon's unavailability as a manner of trial strategy are not supported by any citation to authority, nor do the references to the record he offers support his claims. *See* Pa.R.A.P. 2119(a) (requiring that parties follow the points treated in an argument with "discussion and citation of authorities as are deemed pertinent."). Moreover, to the extent O'Brien argues the admission of the statement violates his right to confrontation,

under Rule 804(b)(6), a defendant forfeits this right when he/she wrongfully obtains the witness' absence at trial. *See King*, 959 A.2d at 415-17.

Further, O'Brien has not argued that the admitted statements were irrelevant or that the probative value of the evidence was outweighed by its potential for unfair prejudice. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted). We therefore conclude that the trial court did not abuse its discretion in admitting Colon's recorded interview at trial under Pa.R.E. 804(b)(6).

In his second claim, O'Brien argues that the trial court erred by admitting evidence of prison communications that was irrelevant to the crimes charged. O'Brien's Brief at 8. O'Brien, however, failed to raise this issue in his Rule 1925(b) statement, thus waiving the issue. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In his third claim, O'Brien argues that the evidence was insufficient to support his conviction of first-degree murder because the Commonwealth failed to prove that O'Brien was the shooter who killed King. O'Brien Brief at 7-8. O'Brien argues that neither eyewitness was able to identify him as the shooter. *Id.* Additionally, he contends that the photos, "altered video

surveillance," forensic analysis, and the Toyota's registration records do not "unequivocally" identify or directly implicate him as the suspect. *Id.*[2]

The trial court addressed O'Brien's challenge to the sufficiency of the evidence supporting his first-degree murder conviction in response to his contention, raised in his Rule 1925(b) statement, that the evidence did not support a finding that the shooting was premeditated, and he therefore only could have been convicted of third-degree murder, not first-degree murder. Trial Court Opinion, 1/23/2024, at 14. The court found that the evidence was more than sufficient, however, to support a conviction of first-degree murder as witnesses testified to hearing the shooter tell King that he was going to shoot him before grabbing a gun from the car and shooting directly at King. *Id.* The court found that the shooter was not provoked and necessarily acted with premeditation because he announced his intention to shoot King, walked back to the car to retrieve a gun, and proceeded to follow through on that threat. *Id.* at 15.

---

[2] We note that in advancing his argument, O'Brien excludes any reference to the evidence presented of Colon identifying him in surveillance footage of the incident. To the extent this omission was based upon his belief that Colon's recorded police interview was wrongly admitted, this Court has consistently held that "in evaluating the sufficiency of the evidence, we do not review a diminished record …[,] we are required to consider all evidence that was actually received, without consideration as to the admissibility of the evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Gray*, 867 A.2d 560, 567(Pa. Super. 2005) (citation omitted).

At the outset, we observe the marked difference between the argument raised in O'Brien's 1925(b) statement (the evidence supported a conviction of third-degree murder, not first-degree murder) and the argument advanced in his brief before this Court (the Commonwealth failed to prove that he was the shooter) results in waiver of the claim. *See Commonwealth v. Heilman*, 876 A.2d 1021, 1028 (Pa. Super. 2005) (finding argument raised in support of claim in appellant's brief that differed from the issue raised in his 1925(b) statement to be waived). Even if not waived, though, the issue is meritless.

We review a challenge to the sufficiency of the evidence according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario,* 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

Our Supreme Court has identified the elements of first-degree murder as follows: "(1) a human being was unlawfully killed; (2) the defendant was

- 13 -

responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." ***Commonwealth v. Martin***, 101 A.3d 706, 718 (Pa. 2014) (citing 18 Pa.C.S. § 2502(a)). Moreover, identification evidence need not be certain and positive to support a conviction. ***Commonwealth v. Williams***, 255 A.3d 565, 579 (Pa. 2021). "Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." ***Commonwealth v. Strafford,*** 194 A.3d 168, 175-76 (Pa. Super. 2018) (citation omitted).

The record evidence reflects that Colon's car was used to travel to the shooting and that both the driver and shooter were connected to 123 S. 9th Street, which is the home address for O'Brien's mother. N.T., 3/14/2023, at 217, 235. Criminal investigator Trevor Atkins ("Atkins") testified that investigators determined the green Toyota was registered to Colon by searching registration records with the vehicle's license plate number. ***Id.*** at 235. Video footage from the Jet Set Restaurant at 118 S. 9th Street in Reading showed a woman wearing a long-sleeved dark top, gray pants and white shoes unloading items from a green Toyota at 123 S. 9th Street before the shooting. ***Id.*** at 251-252. She then entered the vehicle with a man wearing a black jacket, black face mask, gray pants, and white shoes in the passenger seat. ***Id.*** Footage compiled from private businesses and city-owned cameras shows that the Toyota drove to the scene of the shooting. ***Id.*** at 252-55.

Camera footage from the Wells Fargo Bank at 540 Penn Street shows that the Toyota parked and the man in the black jacket, black face mask and gray pants exited the car, drew a gun as the car drove away, argued with and ultimately shot the victim, and soon after fled eastbound on foot. *Id.* at 255-57. Several cameras captured footage of the shooter as he walked back to 123 S. 9th Street. *Id.* 257-59. As the shooter entered the home, the Toyota parked nearby and the same woman in the dark top and gray pants exited the car and entered 123 S. 9th Street. *Id.* at 259. On November 23, 2021, Colon approached police and provided a statement wherein she identified O'Brien as the person surveillance footage showed shooting King and leaving the scene. N.T., 3/15/2023 at 428; N.T., 3/14/2023 at 273; Commonwealth Exhibit 34.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the record both circumstantially and directly supports a finding that O'Brien was the person who shot and killed King. *See Williams*, 255 A.3d at 579.

In light of the foregoing, there is ample evidence to support O'Brien's first-degree murder conviction. Accordingly, his third claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/21/2024