J-S47034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH PETER POTOCZNY | : | |
| | : | |
| Appellant | : | No. 1300 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002262-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED APRIL 17, 2026**

Joseph Peter Potoczny appeals from the judgment of sentence of twelve to twenty-four months of incarceration imposed by the Monroe County Court of Common Pleas ("trial court") following the revocation of his probation. The trial court resentenced Potoczny pursuant to 42 Pa.C.S. § 9771, a statute recently amended by Act 44 of 2023 ("Act 44").[1] Potoczny contends the trial court lacked statutory authority to impose his sentence because the statutory prerequisites to impose a sentence of total confinement were not met and his sentence exceeded the time limitations permitted by section 9771(c)(2). For the reasons that follow, we conclude that the trial court imposed an illegal

_____

[1] *See* Act of Dec. 14, 2023, P.L. 381, No. 44 (effective June 11, 2024).

sentence and therefore vacate the sentence and remand for resentencing in accordance with section 9771(c).

**Facts and Procedural History**

In September 2021, the Commonwealth and Potoczny negotiated an open plea agreement to resolve two unrelated and separate pending criminal cases. At docket number CP-45-CR-0001370-2020, Potoczny pled guilty to manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, a third-degree felony, and recklessly endangering another person ("REAP"), a second-degree misdemeanor (hereinafter referred to as the "Fire Case").[2] At docket number CP-45-CR-0002262-2020, the case underlying the instant appeal, Potoczny pled guilty to REAP (hereinafter referred to as the "REAP Case").[3] On December 14, 2021, the trial court sentenced Potoczny to twenty-four to forty-eight months of incarceration for the Fire Case followed by two years of probation in the REAP case. Sentencing Order, 12/15/2021, at 1.

On October 2, 2024, the Commonwealth filed a petition alleging that Potoczny violated the terms and conditions of his probation (which began July

---

[2] 35 Pa.C.S. § 780-113(a)(30); 18 Pa.C.S. § 2705. According to his plea, Potoczny admitted that on August 21, 2019, he started a fire in an occupied residential structure and created methamphetamine with the intent to distribute it. Written Plea Colloquy, 9/23/2021, at ¶ 4.

[3] 18 Pa.C.S. § 2705. Potoczny admitted that on July 2, 2020, he recklessly endangered a child by having drugs within the child's reach. Written Plea Colloquy, 9/23/2021, at ¶ 4.

18, 2024) by testing positive for methamphetamine and marijuana during an office contact on September 6, 2024. Petition for Probation Violation, 10/2/2024, ¶¶ 2, 5. The petition averred that this violated rule 5a of the rules and regulations governing special probation prohibiting the use of controlled substances without a valid prescription, which rules had been provided to Potoczny and agreed to by him on June 20, 2024. *Id.*, ¶¶ 2, 5.[4]

The trial court issued a bench warrant after Potoczny failed to appear at the scheduled hearing on November 15, 2024. After Potoczny was apprehended and detained, the trial court dissolved the bench warrant at a hearing on November 22, 2024. Trial Court Order, 11/22/2024, at 1.

The Commonwealth filed an amended petition on December 13, 2024. In addition to the almost identical averments of the September 26, 2024 petition, the Commonwealth alleged that Potoczny violated Rule 5a two additional times as he admitted to use of, and tested positive for,

_____

[4] Special probation is a type of probation authorized by statute, whereby special order a court with criminal jurisdiction directs the Pennsylvania Board of Probation and Parole ("the Board") to supervise the offender's probation, thereby subjecting the special probationer to general conditions of special probation set forth in Department of Corrections' regulations. *See* 61 Pa.C.S. § 6172(a); 37 Pa. Code § 65.1, 65.4(5)(i); *Commonwealth v. Smith*, 325 A.3d 794, 799 (Pa. Super. 2024), *appeal denied*, 335 A.3d 301 (Pa. 2025). There is conflicting information in the record regarding which entity (i.e., the Board or Monroe County Probation Department) supervised Potoczny's probation and the terms and conditions of his probation to which he was subject. Nevertheless, Potoczny has not claimed that he was not subject to the condition to which the Commonwealth alleged he violated. We therefore do not need to delve into this question further.

methamphetamine on October 15 and December 10, 2024. Amended Petition for Probation Violation, 12/13/2024, ¶¶ 2-5. Although no warrant appears in the certified record, the petition also alleges that on December 10, 2024, Potoczny was incarcerated "at the Monroe County Correctional Facility on a warrant to commit and detain by the [Board]." *Id.*, ¶ 4.

A hearing on the Commonwealth's request for revocation occurred on December 17, 2024.[5] At the outset, the court asked for clarification of why it had two petitions before it. N.T., 12/17/20124, at 1-2. The prosecutor introduced "Michael Roberts ... from State Parole," who informed the court that Potoczny "was supposed to have a hearing to discuss adding a mental health condition to his probation," but after he violated his probation "multiple times, now we're just doing violations." N.T., 12/17/2024, at 2. A presumably different person identified only as a probation officer indicated that "[i]nitially, there was only one positive on the violation, and then multiple positives came after that," leading the Commonwealth to file the amended petition including all three positive screens. *Id.* at 2-3. The court asked whether it could "get

---

[5] The notes of testimony do not fully identify all people speaking at the hearing. Also, as Potoczny correctly observes, there is no indication that any person speaking did so under oath. *See* Potoczny's Brief at 41 n.5.

rid" of the October petition and the probation officer responded affirmatively. *Id.* at 3.

Attorney William Sanchez from the Monroe County Office of the Public Defender[6] informed the court that Potoczny was "willing to make an admission to the positive drug tests today." *Id.* at 3. The trial court asked whether he was acknowledging positive screens on the three dates alleged in the amended petition and defense counsel responded affirmatively. *Id.* Thereafter, the court immediately stated, "Let's talk resentencing." *Id.* Before the court moved on, Attorney Sanchez clarified that the defense was not disputing that he tested positive on three occasions but maintained that this was "his first technical violation to his probation," not only because it was the first petition for which the Commonwealth sought adjudication of a violation, but also because the three consecutive positive screens stemmed from the same relapse into Potoczny's drug addiction, thereby constituting one event or episode pursuant to section 9771(c)(1)(iii)(F). *Id.* at 4-5. The trial court

---

[6] In the last order of appointment prior to the hearing, the court had appointed Attorney Martín Souto-Díaz to represent Potoczny, citing a conflict of interest in the Public Defender's Office. Trial Court Order, 8/24/2021, at 1. Other than the fact that Attorney Souto-Díaz was on vacation and unavailable, it is not clear from the record how and why Attorney Sanchez represented Potoczny at the hearing instead. Again, this is not a claim Potoczny raises on appeal, and we therefore need not discuss this further.

disagreed, asserting that the statute permitted it to construe each use as a standalone violation.[7]  *Id.*

Returning to resentencing, the court asked each party for its position. *Id.* at 19.  Attorney Sanchez requested an incarceration sentence of fourteen days for a first technical violation and subsequent probation, including

_____

[7]  Parole Officer Roberts also interjected with an alleged violation the Commonwealth had not included in the petition.  *Id.* at 7.  Potoczny, Parole Officer Roberts alleged, had been kicked out of the rehabilitation facility that the Board had sent him to as a sanction in lieu of "violating him" after testing positive on September 6.  *Id.* at 7, 12.  When Attorney Sanchez objected to the allegation being outside the scope of the written petition, the trial court declared that now that it knew about the allegation, it "want[ed] it dealt with," and Potoczny could either admit to being "kicked out of rehab when he was ordered to go," or the court would reschedule the hearing to give the defense time to prepare.  *Id.* at 9-10.  A person identified only as "Mr. Labar"—presumably Monroe County Chief Public Defender Jason LaBar—asserted that the rehab allegation raises a "***Koger/Foster*** issue" because attending rehabilitation was not "specifically a special condition of probation" and pertained to a written instruction from "State Parole."  *Id.* at 11; ***see Commonwealth v. Koger,*** 295 A.3d 699 (Pa. 2023); ***Commonwealth v. Foster***, 214 A.3d 1240 (Pa. 2019).  Despite expressing doubt that it had jurisdiction to address this allegation, and having no sworn witness to present testimony concerning any facts regarding the incident, the court questioned Potoczny about the incident to try to "get his perspective."  N.T., 12/17/2024, at 12-16.  Specifically, after the prosecutor handed the court an unidentified and unadmitted document authored by Endless Mountains Extended Care, the court asked Potoczny to confirm or deny comments the facility attributed to Potoczny.  *Id*. at 16.  Eventually, Potoczny admitted that he made "inappropriate sexually explicit comments about the owner of the facility" that were "rude and sexual."  *Id.* at 17.  Returning the document to the prosecutor, the court commented, "I don't know what happened in rehab.  I know that there was one inappropriate comment."  *Id.* at 18.  In this highly informal hearing, it is unclear whether the trial court considered this information for purposes of sentencing.  Potoczny does not raise this on appeal, and based upon our resolution of the claims raised, it does not impact our decision.

attending outpatient treatment. *Id.* at 19. The prosecutor asked for four to eighteen months of incarceration, arguing that "each drug screen is a technical violation," for a total of three. *Id.*

Commenting that Potoczny had a "less than stellar record under supervision," the trial court noted that this was the second time he had a term of probation revoked, as well as two revocations of parole. *Id.* at 20. It also recounted that his prior criminal history dating back to the early 2000s "was riddled with theft and now drugs," use of "marijuana and meth for some time now," and an unspecified mental health diagnosis for which he takes medication. *Id.* The court concluded that "county supervision has not worked" and it would "like to see him try it in the state drug treatment court," as the state had the "best potential resources for this [d]efendant." *Id.* at 21.

The trial court revoked Potoczny's probation and resentenced him to twelve to twenty-four months of incarceration at a state correctional institution—the statutory maximum sentence for REAP. *See* Sentencing Order, 12/17/2024, at 1; *see also* 18 Pa.C.S. § 1104 (providing maximum sentence of two years for second-degree misdemeanors). It directed the Department of Corrections to evaluate him for state drug treatment court and specified that the September 22, 2021 sentencing order otherwise remained in effect. *Id.* It awarded him time credit for the twenty-four days he was detained prior to the hearing. *Id.*

Potoczny did not file a post-sentence motion. Following the reinstatement of his appellate rights through a Post-Conviction Relief Act petition filed through his originally appointed counsel, Attorney Souto-Díaz, he filed a timely notice of appeal nunc pro tunc. Both Potoczny and the trial court have complied with Rule 1925 of our Rules of Appellate Procedure.

## Issues on Appeal

Potoczny presents three issues for our review, which we reorder for ease of disposition:

> 1. Whether the trial court erred in failing to colloquy [] Potoczny about his admission on the record?
>
> 2. Whether the trial court erred when it sentenced [Potoczny] to a period of total confinement without statutory authority to do so, as none of the enumerated conditions in 42 Pa.C.S. [§] 9771(c)(1)(i)-(iii) have been met?
>
> 3. Whether the trial court imposed an illegal sentence and failed to follow the recidivist philosophy intended by the legislature's carefully graduated sentencing sanctions in 42 Pa.C.S. [§] 9771(c)(2) when it stacked three technical violations in [Potoczny's] first probation violation petition and resentenced [him] under 42 Pa.C.S. [§] 9771(c)(2)(iii) instead of imposing the 14-day maximum period for a first technical violation and allowing [Potoczny] an opportunity to reform?

Potoczny's Brief at 5.

## Legal Standards

On appeal from a judgment of sentence imposed following probation revocation, this Court may review the validity of a proceeding revoking probation, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. ***Commonwealth v. Cartrette***, 83 A.3d

1030 (Pa. Super. 2013) (en banc).  In general, we will not disturb the trial court's decision to revoke probation "on appeal in the absence of an error of law or an abuse of discretion."  **Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa. Super. 2014).

When reviewing a challenge to the sentence imposed following the revocation of probation, we consider whether the challenge pertains to the sentence's legality or its discretionary aspects.  **Commonwealth v. Seals**, __ A.3d __, 2026 WL 739101, *7 (Pa. Super. 2026) (en banc).  A claim that section 9771(c)(1)'s prerequisites for a sentence of total confinement were not satisfied is a claim that the trial court exceeded its authority by imposing a sentence of total confinement, which constitutes a non-waivable challenge to the legality of the sentence.  **Id.** at *11-12.  Likewise, a claim that a court exceeded the time limitations permitted by section 9771(c)(2) is a claim of sentence illegality.  **Id.** at *12.

> We review challenges to the legality of sentence de novo and with a plenary scope of review.  Where, as here, our statutory analysis concludes that the trial court's authority is preconditioned on the finding of a triggering fact, the legality of sentence claim includes our de novo review of whether the requisite fact exists.  To the extent that our analysis requires us to engage in statutory interpretation, that too presents a question of law, of which we engage in a de novo review.

**Id.** at *14 (citations and quotation marks omitted).

According to the Statutory Construction Act, the object of a court's statutory interpretation is to "ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  The plain language of the statute

traditionally "provides the best indication of legislative intent." *Commonwealth v. Crosby*, 329 A.3d 1141, 1149 (Pa. 2025). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The General Assembly has instructed courts to ascribe the "common and approved meaning" to its chosen words and phrases, unless the word or phrase is technical, has acquired a peculiar and appropriate meaning, or is expressly defined in the statute. 1 Pa.C.S. § 1903(a). We consider the statutory language not in isolation, but in the context within which it appears. *Commonwealth v. Rosario*, 294 A.3d 338, 346 (Pa. 2023); *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016). "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). If statutory language is ambiguous, sections 1921(c) and 1922 enumerate nonexclusive lists of eight statutory construction factors and five presumptions that we may consider to aid us in discerning the General Assembly's intent. *See id.* §§ 1921(c), 1922.

Probation revocation "is an integral element of the original conditional sentence." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007). The court may revoke an order of probation upon proof by a preponderance of the evidence that a probationer violated "specified conditions of probation." 42 Pa.C.S. § 9771(b); *see also Commonwealth v. Foster*, 214 A.3d 1240, 1243 (Pa. 2019). After considering the "record of the sentencing proceeding,

together with evidence of the conduct of the defendant while on probation," and making a finding on the record that a violation of a condition of probation occurred, the trial court may revoke the term of probation and resentence the probationer. *See* 42 Pa.C.S. §§ 9754(d), 9771(d); *see also* Pa.R.Crim.P. 708(B)(1)-(2) (court may not revoke probation without "a hearing held as speedily as a possible at which defendant is present and represented by counsel" and "a finding of record that the defendant violated a condition of probation").

"The full panoply of rights due a defendant in a criminal trial does not apply at a VOP hearing." *Mullins*, 918 at 85. Because a probation revocation results in a loss of liberty, however, a probationer must be accorded due process in a two-step process, including (1) a finding that probable cause exists to believe the probationer violated a condition of probation, and (2) a more comprehensive hearing to determine whether revocation is required. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Commonwealth v. Davis*, 336 A.2d 616, 620 (Pa. Super. 1975); *Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000). A probationer is entitled to due process rights at the *Gagnon II* revocation hearing, including: (1) written notice of the claimed violation(s); (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the

factfinder as to the evidence relied on and reasons for revocation. **Commonwealth v. Kates**, 305 A.2d 701, 709 (Pa. 1973) (citing **Morrisey v. Brewer**, 408 U.S. 471, 488 (1972)).

If the court decides to revoke probation, it proceeds to resentencing. **Commonwealth v. Mazzetti**, 44 A.3d 58, 64-65 (Pa. 2012). Section 9771(b) provides that, subject to the limitations imposed by subsections (b.1) and (c), upon revocation "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing," including any applicable mandatory minimum sentence the Commonwealth may seek for the court to impose upon resentencing, with "due consideration being given to the time spent serving the order of probation." **Id.** § 9771(b). The trial court's discretion to resentence a probation violator to a period of total incarceration, however, is cabined by section 9771(c). **Id.** § 9771(c); **see also Seals**, 2026 WL 739101, at *11. Section 9771(c), which is entitled "Limitation on sentence of total confinement," begins by expressly setting forth "a presumption against total confinement for technical violations of probation." 42 Pa.C.S. § 9771(c). Section 9771(c) then sets forth two analytical components: subsection (c)(1), which contains the prerequisites to imposing a sentence of total confinement, and subsection (c)(2), which prescribes the time limitations upon such sentences. **See id.** § 9771(c)(1)-(2); **Seals**, 2026 WL 739101, at *7.

First, to be able to exercise its discretion to select the sentencing alternative of total confinement following revocation at all, the court first must examine the criteria in section 9771(c)(1). *Id.* Subsection (c)(1) presents three circumstances wherein a court may resentence a defendant to a period of total confinement following revocation of probation:

> (i) the defendant has been convicted of another crime;
>
> (ii) the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means; or
>
> (iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
>
> (A) The technical violation was sexual in nature.
>
> (B) The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.
>
> (C) The technical violation involved possession or control of a firearm or dangerous weapon.
>
> (D) The technical violation involved the manufacture, sale, delivery or possession with the intent to manufacture, sell or deliver, a controlled substance or other drug regulated under … The Controlled Substance, Drug, Device and Cosmetic Act.
>
> (E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.
>
> (F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations

stemming from the same episode of events shall not constitute separate technical violations.

42 Pa.C.S. § 9771(c)(1)(i)-(iii) (footnote omitted).  These are "statutory prerequisites" that unlock the trial court's authority to impose a sentence of incarceration.  **Seals**, 2026 WL 739101, at *11.

Second, if the court is resentencing a defendant for a technical violation of probation pursuant to subsection (c)(1)(i) or (ii), the court must turn to subsection (c)(2), which directs it to consider the probationer's employment status and to select the applicable maximum length of the sentence.  **See id.** at *7, 12, 19; **see also** 42 Pa.C.S. § 9771(c)(2).  The statute authorizes a maximum period of fourteen days for a first technical violation and a maximum period of thirty days for a second technical violation.  42 Pa.C.S. § 9771(c)(2)(i), (ii).  "For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing."  **Id.** § 9771(c)(2)(iii).  The statute also provides that the paragraph's time limitations shall not apply if a reasonable term of additional confinement, not to exceed thirty days, is necessary to allow evaluation for or participation in certain treatment programs or courts.  **Id.** § 9771(c)(2)(iv).

**Issue One: Procedural Defects Regarding Revocation**

Potoczny first challenges the validity of the hearing establishing that he violated his probation and that revocation was warranted.  Potoczny's Brief at 12, 43-45.  He argues that his hearing was defective because the trial court did not conduct an on-the-record colloquy to determine whether Potoczny

knowingly and voluntarily admitted to violating his probation. **Id.** He acknowledges that no specific rule of criminal procedure mandates a colloquy before such an admission; given the importance of the rights at stake, however, he argues that a court should not proceed by accepting counsel's admission without confirming that the probationer understood the admission or its implications. **Id.** at 43-45. He argues that probationers are afforded due process, including the right to have evidence presented of record and the right to a **Gagnon II** hearing, and while probationers may waive such rights, "the record must clearly demonstrate informed relinquishment of a known right." **Id.** at 45 (quoting **Commonwealth v. Heilman**, 876 A.2d 1021 (Pa. Super. 2005)).

As Potoczny recognizes, Rule 708 of the Pennsylvania Rules of Criminal Procedure, which pertains to revocation hearings, does not address an admission to the violation allegations in general or require a colloquy for such an admission in particular. **See** Pa.R.Crim.P. 708. Although a defendant may waive the due process rights afforded in a **Gagnon II** hearing, we will not infer the waiver. **See Heilman**, 876 A.2d at 1027 ("[A] tacit or implied waiver of a constitutional right is simply insufficient."). To be effective, the record must clearly demonstrate an "informed relinquishment of a known right." **Id.** Whether this standard specifically requires a colloquy regarding the probationer's decision to admit to factual averments in a revocation petition or to concede that the factual averments constitute a probation violation

warranting revocation—thereby forgoing the opportunity to be heard in person, to have the Commonwealth present and prove the evidence against probationer, to present his or her evidence in defense, and to confront and cross-examine adverse witnesses—is neither established nor foreclosed under Pennsylvania jurisprudence.[8]

While it is clear a defendant may not tacitly waive due process rights in the court below, it is equally clear the defendant waives an opportunity to challenge the intrusion upon his or her due process rights on appeal by failing to present the challenge to the trial court in the first instance. **See** Pa.R.A.P. 302(a) ("Issues not raised in lower court are waived and cannot be raised for

---

[8] Some decisions suggest that the court must at least ascertain the knowing and voluntary nature of the admission, but none carry precedential value either because of their unreported nature or failure to command a majority. **See, e.g.**, **See Commonwealth v. Bell**, 410 A.2d 843, 844 (Pa. Super. 1979) (Hester, J.; Cercone, P.J. and Hoffman, J., concurring in the result) (asserting that "some on the record showing must be made to determine whether a waiver is voluntary" because a probationer gives up "important rights" when agreeing not to contest alleged probation violations); **see also Commonwealth v. Miller,** 283 A.3d 376, *2 (Pa. Super. 2022) (non-precedential decision) (finding probationer waived sufficiency challenge by stipulating to violating specific terms of his probation and not contending that the stipulation was unknowing or involuntary on appeal); **Commonwealth v. Burns**, 281 A.3d 1059 *6 n.8 (Pa. Super. 2022) (non-precedential decision) (analyzing whether stipulation to probation violation was knowing, voluntary, and intelligent); **Commonwealth v. Ramirez**, 279 A.3d 1285, *2 n.4 (Pa. Super. 2022) (non-precedential decision) (opining Pa.R.Crim.P. 590, a procedural rule governing acceptance of pleas, was broad enough to encompass probation revocation cases); **Commonwealth v. Holley**, 1765 EDA 2018, 2019 WL 2056672, at *2 (Pa. Super. May 8, 2019) (record demonstrates that appellant knowingly, intelligently, and voluntarily entered into stipulation that probation was violated) (non-precedential decision).

the first time on appeal."); Pa. R. Crim. P. 708 (cmt.) ("In deciding whether to move to modify sentence, counsel must carefully consider whether the record created at the sentencing proceeding is adequate for appellate review of the issues, or the issues may be waived."); **Commonwealth v. Collins**, 424 A.2d 1254, 1254 (Pa. 1981) (petitioner waived claims regarding inadequate notice, denial of right to confront adverse witnesses, speediness of revocation hearing, and failure to comport with due process by not raising them during counselled revocation proceeding); **see also Commonwealth v. Morales**, No. 843 EDA 2018, 2019 WL 1988493, at *2 (Pa. Super. May 6, 2019) (non-precedential decision) (appellant failed to preserve issue for appeal by failing to object to validity of his stipulation to violating his probation). As Potoczny failed to object to the lack of colloquy at the hearing or in a motion to modify his sentence, we are constrained to find his claim waived for purposes of appeal.

### Issue Two: Failure to Satisfy Section 9771(c)(1)

Notwithstanding his acknowledgment at the hearing that he tested positive on the three dates specified in the Commonwealth's amended petition, Potoczny contends that the trial court erred by relying upon section 9771(c)(1)(iii)(F) to overcome the general presumption against total confinement. Potoczny's Brief at 41-42. Potoczny argues that his sentence is illegal because the trial court neither made a finding, nor received any evidence upon which a finding could be based, that he "'cannot be safely

diverted from total confinement through less restrictive means.'" ***Id.*** at 41 (quoting 42 Pa.C.S. § 9771(c)(1)(iii)(F)).[9]   He notes that no witness was sworn to give testimony and no evidence was provided to demonstrate that "less restrictive means would be unavailable or unpersuasive." ***Id.*** at 41 & n.5.   His admission to the three positive drug tests, he argues, is insufficient to overcome the presumption against incarceration because the statute expressly requires that the trial court make a finding about less restrictive means supported by preponderance of the evidence. ***Id.*** at 42.   To allow his incarceration based on his admission alone, without any evidence in support or a finding made that no less restrictive means were available, would nullify the evidentiary requirement and the less restrictive means standard required by subsection (c)(1)(iii)(F). ***Id.***

The Commonwealth's only argument pertaining to the less restrictive means component is its argument that the "evidence indicates that the defendant could not be safely diverted from a brief period of incarceration." Commonwealth's Brief at 23-26.   From the Commonwealth's perspective, "there was a detailed review" at the hearing of Potoczny's "extensive and ongoing drug abuse, including his use of dangerous drugs, specif[i]cally

_____

[9] At the hearing, Potoczny argued that his three positive screens stemmed from the same episode of events—a single relapse—for purposes of subsection (c)(1)(iii)(F).  We may nonetheless consider the argument he advances before this Court, as it is encompassed by our ability to review challenges to the legality of a sentence de novo without regard to traditional issue preservation. ***See Seals***, 2026 WL 739101, at *14.

methamphetamines," which alone "required the judge to incarcerate … in order to address outstanding treatment and rehabilitation issues" and adhere to the Sentencing Code's requirement that it address the defendant's rehabilitative needs. *Id.* (citations omitted).

The newly revised statute is clear that to impose a sentence of total confinement, the trial court must make a finding "by a preponderance of the evidence that the defendant committed a technical violation **and** any of the following apply," one of which is the criteria in subsection (F). 42 Pa.C.S. § 9771(c)(1)(iii) (emphasis added). Subsection (F) applies if the "technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions **and** the defendant cannot be safely diverted from total confinement through less restrictive means." *Id.* (emphasis added).

Deconstructing the subsection's components, we observe that by its plain language, subsection (c)(1)(iii)(F) permits the court to select the sentencing alternative of total confinement if it finds, by a preponderance of the evidence, that the defendant's "technical violation" (1) involved a "failure to adhere to recommended programming or conditions"; (2) such failure was "intentional and unexcused"; (3) such failure occurred "on three or more separate occasions"; and (4) "the defendant cannot be safely diverted from incarceration through less restrictive means." *See id.* § 9771(c)(1)(iii)(F). Further, "for purposes of this clause," i.e., subsection (c)(1)(iii)(F), "multiple

technical violations stemming from the same episode of events shall not constitute separate technical violations." *Id.*

In reaching its conclusion that it properly sentenced Potoczny to a period of incarceration for his third technical violation, the trial court focused exclusively on whether Potoczny's failure to adhere to recommended programming or conditions occurred on three or more separate occasions, addressing none of the other components of subsection (c)(1)(iii)(F). *See* Trial Court Opinion, 6/11/2025, at 8. In its written opinion, the court reasoned that "the operative phrase" of subsection (c)(1)(iii)(F) is the requirement that the violations have occurred on "separate occasions"; because Potoczny tested positive for controlled substances three times, each of which constituted a separate violation standing alone, his three separate positive drug screens constituted three separate violations on three separate occasions. *Id.* The trial court does not discuss the evidence (if any) upon which it relied to determine that the Commonwealth established by a preponderance of the evidence that there was no less restrictive means to safely defer Potoczny from a sentence of total confinement. Nor does it state that it reached any such conclusion.

We agree with Potoczny that the trial court's failure to make a finding regarding whether the preponderance of the evidence showed that less restrictive means could not divert him from incarceration renders his sentence illegal. The trial court is not authorized to sentence a probationer to total

confinement unless **all** statutory prerequisites are met. **Seals**, 2025 WL 4234323, at *11. Despite correctly quoting the statutory language, **see** Trial Court Opinion, 6/11/2025, at 6, the trial court did not otherwise mention the "less restrictive" component of subsection (c)(1)(iii)(F), and the record is devoid of evidence upon which the court could have made such a finding for purposes of sentencing.

We disagree with the Commonwealth that a court's mere mention of a probationer's continued use of drugs, in of itself, satisfies the statutory requirement of a finding that incarceration is necessary based upon the preponderance of the evidence. We recognize that the court commented generally at the end of the hearing regarding Potoczny's prior revocations of probation and parole, criminal history related to theft and drugs, sustained drug use, and mental health concerns. **Id.** at 20-21.[10] It then concluded that "county supervision has not worked" and it would "like to see him try it in the state drug treatment court," as the state had the "best potential resources for this [d]efendant." **Id.** at 21. Although these stated reasons may support the court's discretion to impose a sentence of total confinement pursuant to section 9721(b),[11] to be able to exercise this discretion in the first place, all

---

[10] We note there is nothing in the record that supports the trial court's comments to this effect.

[11] Pursuant to section 9721(b), at any time a trial court is determining a defendant's sentence, it is required to "follow the general principle that the
*(Footnote Continued Next Page)*

components of (c)(1)(i), (ii), or (iii) must first be satisfied. **See Seals**, 2026 WL 739101, at *11. We decline to equate these offhand statements, without record support, made at the conclusion of the hearing with a specific finding that Potoczny cannot be safely diverted from total confinement through less restrictive means. Indeed, the record is devoid of any indication that the court even considered means of punishment and rehabilitation less restrictive than total confinement.

Even if the court intended its statements to be a finding that no less restrictive means would deter Potoczny, without a more comprehensive admission by the defendant and/or any evidence offered in support by the Commonwealth, the finding would lack evidentiary support in the record. **Cf. Commonwealth v. Goodwin**, ___ A.3d ___, 2026 WL 775409, *6 (Pa. Super. 2026) (affirming finding regarding no less restrictive means based upon the nature of the defendant's admission and the probation officer's sworn testimony, which demonstrated that the probationer deliberately chose not to comply with any conditions and obligations of his probation early on and his repeated conduct of noncompliance (absconding), even when given the opportunity by his probation officer to return and start over without a

_____

sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," as well as the sentencing or resentencing guidelines. 42 Pa.C.S. § 9721(b).

violation, "showed that nothing short of imprisonment could compel his compliance"). Upon review of the hearing in its entirety, counsel's statement representing that Potoczny tested positive three times constituted, at most, an admission that he violated the conditions of his probation. Without a specific acquiescence to every element required by the statute to sentence Potoczny to a term of incarceration or any sworn testimony, counsel's brief statement cannot be extrapolated into an all-encompassing admission that substituted for the court's required evidentiary findings for purposes of resentencing, particularly in light of Potoczny's specific objection pursuant to subsection (c)(1)(iii)(F) to the trial court construing his three admittedly positive screens as three separate violations. *See* N.T., 12/17/2024, at 5.

This is not to say that a court could never incarcerate a person who persists in drug use while on probation. Based upon the record before us, however, we cannot conclude that the Commonwealth satisfied its burden to provide the trial court with the evidence it needed to find all components of section 9771(c)(1)(iii)(F), thereby triggering its authority to exercise its discretion to impose a sentence of total confinement. Therefore, as it stands, the trial court imposed an illegal sentence. Accordingly, we vacate Potoczny's

judgment of sentence and remand for resentencing that complies with the requirements of section 9771(c).[12]

Judgment of sentence vacated. Case remanded with instructions. Petition granted. Jurisdiction relinquished.

Judge Olson joins the memorandum.

President Judge Emeritus Panella concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2026

---

[12] As such, we do not reach Potoczny's third issue, wherein he contends that the trial court improperly considered his three positive drug screens alleged in a single revocation petition as justifying resentencing him under 42 Pa.C.S. § 9771(c)(2)(iii). *See* Potoczny's Brief at 13-34. Since the parties briefed the issues in this case, and as Potoczny recognized in an after-filed petition before this Court, we decided ***Goodwin***, wherein this Court held that section 9771(c)(2)(i)-(iii) reflects the General Assembly's intent to impose a graduated sentencing scheme with a recidivist philosophy. ***Goodwin***, 2026 WL 775409, at *8; *see also* Application for Leave to File Notice of Supplemental Authority, 3/23/2026 (hereinafter, "Petition"). Pursuant to ***Goodwin***, if the Commonwealth files a first petition seeking revocation of probation for technical violations—even if alleging the defendant committed multiple, independent and separate violations—the defendant can only be sentenced therefor as a first technical violator pursuant to section 9711(c)(2)(i). ***Goodwin***, 2026 WL 775409, at **6-8. Thus, even if we had concluded that the trial court did not exceed its authority pursuant to subsection (c)(1), we would vacate the sentence as illegal because the trial court exceeded the fourteen-day statutory maximum for a first technical violation pursuant to subsection (c)(2)(i). *See id.* at *8.